# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ENOVSYS LLC,<br><br>     Plaintiff,<br><br>  v<br><br>VERIZON COMMUNICATIONS, INC.,<br>VERIZON BUSINESS NETWORK<br>SERVICES, INC., VERIZON ENTERPRISE<br>SOLUTIONS, LLC, CELLCO PARTNERSHIP<br>D/B/A VERIZON WIRELESS, INC.,<br>VERIZON DATA SERVICES LLC, VERIZON<br>BUSINESS GLOBAL, LLC, and VERIZON<br>SERVICES CORP.,<br><br>     Defendant. | CASE NO. 2:21-CV-00315-JRG-RSP<br><br>JURY TRIAL DEMANDED |

## DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    COLLATERAL ESTOPPEL (ISSUE PRECLUSION) ............................. 2

       A.    Identical claim construction issues were decided in the AT&T
             case .................................................................................................... 4

       B.    These claim construction issues were actually litigated in the
             AT&T case .......................................................................................... 6

       C.    Determination of these claim construction issues was a necessary
             part of the judgment in the AT&T case ............................................. 6

III.   THE '159 PATENT ........................................................................................ 7

       A.    Claims and terms that are indefinite ................................................. 8

             1.    '159 claim 1 (mixed apparatus-method claim) ...................... 8

             2.    '159 claim 11 ("means to activate or deactivate the
                   positioning disclosure feature from the paging network by
                   transmitting specific information to the paging network
                   that will enable the blocking of none, certain or all users
                   to the global location of the call receiver") ....................... 10

       B.    Terms that do not require construction ............................................ 12

IV.    THE '461, '273, '188, AND '078 PATENTS ............................................. 15

       A.    Terms for which Enovsys is collaterally estopped from seeking its
             proposed construction ...................................................................... 16

             1.    "mobile remote unit" ............................................................ 16

             2.    "preauthorized" and "authorized" ........................................ 17

             3.    "at the network" ................................................................... 19

             4.    "continuously tracked" ......................................................... 20

       B.    Claims and terms that are indefinite ............................................... 21

             1.    '078 claim 19 ("recent") ....................................................... 22

             2.    '188 claim 13 (mixed apparatus-method claim) ................. 24

3.   '188 claim 11 ("privacy profile command to selectively deny or selectively accept to provide access to the position of the call receiver to less than all authorized communication resources") ...............................................25

4.   '188 claim 18 ("an override to verify whether a location privacy profile that is used for accepting or denying access to the location information of said portable mobile handset permits the disclosure of said location information to at least a location requestor amongst said one or more communication resources submitting valid permission")................27

C.   Terms that do not require construction ...........................................29

V.   CONCLUSION.......................................................................................30

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. McCurry*,
    449 U.S. 90 (1980)...........................................................................................................2

*Americana Fabrics, Inc. v. L & L Textiles, Inc.*,
    754 F.2d 1524 (9th Cir. 1985) ......................................................................................3

*Ariba, Inc. v. Emptoris, Inc.*,
    No. 9:07-cv-90, 2008 U.S. Dist. LEXIS 59862 (E.D. Tex. Aug. 7, 2008)...............8

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)..................................................................................22

*Blackboard, Inc. v. Desire2Learn, Inc.*,
    574 F.3d 1371 (Fed. Cir. 2009)..................................................................12, 27, 29

*Bradberry v. Jefferson County*,
    732 F.3d 540 (5th Cir. 2013) .......................................................................................4

*CA, Inc. v. Netflix, Inc.*,
    Case No. 2:21-CV-00080-JRG-RSP, 2021 U.S. Dist. LEXIS 221133 ............22, 23

*Canon, Inc. v. TCL Elecs. Holdings Ltd.*,
    No. 2:18-CV-546-JRG, 2020 U.S. Dist. LEXIS 76751 (E.D. Tex. May 1,
    2020) ...........................................................................................................................12

*Curtiss-Wright Flow Control Corp. v. Z & J Techs. GmbH*,
    563 F. Supp. 2d 1109 (C.D. Cal. 2007) ......................................................................6

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
    412 F.3d 1291 (Fed. Cir. 2005)..................................................................................15

*DeShazo v. Nations Energy Co.*,
    286 F. App'x 110 (5th Cir. 2008) .......................................................2, 16, 18, 20

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
    70 F. Supp. 3d 808 (E.D. Tex. 2014).............................................2, 17, 18, 20, 21

*Digital Retail Apps, Inc. v. Sam's Club West, Inc.*,
    No. 2:21-CV-00184-JRG-RSP, Dkt. 58 (E.D. Tex. Mar. 1, 2022) (Ex. P) ...........10, 25, 26, 28

*e.Digital Corp. v. Futurewei Techs., Inc.*,
    772 F.3d 723 (Fed. Cir. 2014).......................................................................3, 5, 6

*Edberg v. CPI-The Alternative Supplier, Inc.*,
  156 F. Supp. 2d 190 (D. Conn. 2001) ........................................................................6

*Egenera, Inc. v. Cisco Sys.*,
  972 F.3d 1367 (Fed. Cir. 2020) ................................................................25, 26, 28

*Enovsys LLC v. AT&T Mobility LLC*,
  678 Fed. Appx. 1025 (Fed. Cir. 2017) ...............................................................7, 18

*Enovsys LLC v. AT&T Mobility LLC et al*,
  2:11-cv-05210-SS (C.D. Cal.) ................................................................................1

*Enovsys LLC v. Nextel Communications*,
  2:06-cv-05306-RSWL-SH (C.D. Cal.) ....................................................................1

*EON Corp. IP Holdings LLC v. AT&T Mobility LLC*,
  785 F.3d 616 (Fed. Cir. 2015) ....................................................................11, 27, 29

*Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co. of Vidalia, Ga.*,
  510 F.2d 272 (5th Cir. 1975) (per curiam) .............................................................7

*Finisar Corp. v. DirecTV Group, Inc.*,
  523 F.3d 1323 (Fed. Cir. 2008) ..................................................................12, 27, 29

*HTC Corp. v. IPCom GmbH & Co.*,
  667 F.3d 1270 (Fed. Cir. 2012) ...............................................................................9

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  937 F.3d 1359 (Fed. Cir. 2019) .........................................................2, 16, 18, 20, 21

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014) .............................................................................22

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005) ...............................................................................8

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
  520 F.3d 1367 (Fed. Cir. 2008) ...............................................................................9

*Mobile Telcoms. Techs., LLC v. ZTE (USA) Inc.*,
  No. 2:13-cv-946-JRG-RSP, 2016 U.S. Dist. LEXIS 48766 (E.D. Tex. Apr. 12,
  2016) ....................................................................................................................3, 6

*Moneysuite Co. v. Ins. Answer Ctr., LLC*,
  No. SACV 11–1847 AG (JPRx), 2013 WL 6925942 (C.D. Cal. Mar. 25,
  2013) .....................................................................................................................13

*Montana v. United States*,
  440 U.S. 147 (1979) ................................................................................................2

iv

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
    252 F.3d 1306 (Fed. Cir. 2001)................................................................3, 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014).........................................................................22

*Nestlé USA, Inc. v. Steuben Foods, Inc.*,
    884 F.3d 1350 (Fed. Cir. 2018).......................................3, 4, 5, 19, 21

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005)..............................................................5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)...........................................................12

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013).........................................2, 4, 5, 17, 19, 21

*Petro-Hunt, L.L.C. v. United States*,
    365 F.3d 385 (5th Cir. 2004) ................................................................4

*Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999)..............................................................7

*Pi-Net Int'l Inc. v. JPMorgan Chase & Co.*,
    No. 12-282-SLR, 2014 U.S. Dist. LEXIS 66063 (D. Del. May 14, 2014)..............12, 27, 29

*Recoveredge, L.P. v. Pentecost*,
    44 F.3d 1284 (5th Cir. 1995) .......................................................2, 16, 18, 20

*Reimer v. Smith*,
    663 F.2d 1316 (5th Cir. 1981) ..............................................................2

*Rembrandt Data Technologies, LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011)......................................................8, 9, 14

*Rockwell Int'l Corp. v. United States*,
    147 F.3d 1358 (Fed. Cir. 1998)..............................................................7

*Star Envirotech, Inc., v. Redline Detection, LLC*,
    2015 WL 12743875 (C.D. Cal. Apr. 30, 2015) .......................................13

*Texas v. Am. Tobacco Co*,
    441 F. Supp. 3d 397 (E.D. Tex. 2020)................................................2, 3

*TM Patents, L.P. v. IBM*,
    72 F. Supp. 2d 370 (S.D.N.Y. 1999)...................................................3, 6

*Triton Tech. of Tex., LLC v. Nintendo of Am., Inc.*,
    753 F.3d 1375 (Fed. Cir. 2014)....................................10, 11, 25, 26, 27, 29

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)........................................................................................12

*UltimatePointer, LLC v. Nintendo Co., Ltd.*,
    No. 6:11-cv-496-LED, 2013 U.S. Dist. LEXIS 74276 (E.D. Tex. May 28,
    2013) ...................................................................................................................................8

*Ultravision Techs. v. Holophane Eur.*,
    No. 2:19-cv-00291-JRG-RSP, 2020 U.S. Dist. LEXIS 198120 (E.D. Tex. Oct.
    26, 2020) ...........................................................................................................................13

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
    No. 2:18-cv-0042-JRG-RSP, 2019 WL 11023944 (E.D. Tex. Apr. 18, 2019)............12, 27, 29

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015).................................................................................25, 28

**Statutes**

35 U.S.C. § 112, ¶ 2 ......................................................................................................................9

35 U.S.C. § 112, ¶ 4 ....................................................................................................................25

35 U.S.C. § 112, ¶ 6 .............................................................................................10, 25, 26, 27, 28

## **EXHIBITS**

**Ex. A:** *Enovsys LLC v. AT&T Mobility LLC et al*, 2:11-cv-05210-SS (C.D. Cal.) ("AT&T case"), Dkt. 646 (Final Jury Instructions, Aug. 25, 2015)

**Ex. B:** AT&T case, Dkt. 367 (Claim Construction Order, Aug. 22, 2014)

**Ex. C:** AT&T case, Dkt. 58 (Enovsys's Opening Claim Construction Brief, Oct. 29, 2012)

**Ex. D:** AT&T case, Dkt. 61 (AT&T's Opening Claim Construction Brief, Oct. 29, 2012)

**Ex. E:** AT&T case, Dkt. 62 (Enovsys's Responsive Claim Construction Brief, Nov. 19, 2012)

**Ex. F:** AT&T case, Dkt. 63 (AT&T's Responsive Claim Construction Brief, Nov. 19, 2012)

**Ex. G:** AT&T case, Dkt. 535 (Excerpts from Claim Construction Briefing, Jul. 31, 2015)

**Ex. H:** AT&T case, Dkt. 140-1 (Enovsys's Claim Construction Presentation, Jun. 14, 2013)

**Ex. I:** AT&T case, Dkt. 141-1 (AT&T's Claim Construction Presentation, Jun. 18, 2013)

**Ex. J:** AT&T case, Dkt. 142 (Transcript of Claim Construction Hearing, Jun. 19, 2013)

**Ex. K:** AT&T case, Dkt. 640 (Claim Construction Order, Aug. 24, 2015)

**Ex. L:** AT&T case, Excerpts from Dkts. 754-55, 719-21 (Trial Transcript, Aug. 18-21 and 25, 2015)

**Ex. M:** AT&T case, Dkt. 667 (Verdict Form, Aug. 27, 2015)

**Ex. N:** AT&T case, Dkt. 702 (Judgment, Nov. 16, 2015)

**Ex. O:** *Enovsys LLC v. AT&T Mobility LLC et al*, 2016-1691, -1767 (Fed. Cir.), Excerpt from Dkt. 25 (Corrected Brief for Appellant Enovsys LLC, Jun. 9, 2016)

**Ex. P:** *Digital Retail Apps, Inc. v. Sam's Club West, Inc. D/B/A Sam's Club*, No. 2:21-cv-00184-JRG-RSP, Dkt. 58 (E.D. Tex. Mar. 2, 2022) (Claim Construction Opinion and Order)

## I.      INTRODUCTION

This case involves five expired patents that are related and claim priority to an application filed in 1997. Plaintiff Enovsys asserted two of these patents against Sprint/Nextel in 2006 and now urges this Court to adopt most of the claim constructions issued in that case, *Enovsys LLC v. Nextel Communications*, 2:06-cv-05306-RSWL-SH (C.D. Cal.) ("Sprint case"). What Enovsys fails to explain in its opening brief is that the same court reconsidered and rejected several of Enovsys's proposed constructions in a subsequent case Enovsys filed against AT&T in 2011, *Enovsys LLC v. AT&T Mobility LLC et al*, 2:11-cv-05210-SS (C.D. Cal.) ("AT&T case"). In the AT&T case, the court issued new claim constructions, which the jury applied in reaching a verdict of non-infringement and invalidity that was affirmed on appeal. The doctrine of collateral estoppel (issue preclusion) bars Enovsys from relitigating those same claim construction issues in the present case.

Where there are inconsistencies between the prior claim construction decisions, under the last-in-time rule followed in the Fifth Circuit, this Court may give preclusive effect *only* to the more recent claim constructions from the AT&T case. Enovsys had its opportunity to appeal those claim constructions and may not attack them collaterally here. This Court should adopt the claim constructions from the AT&T case.

In addition to previously litigated claim construction issues that should be resolved through collateral estoppel, Verizon raises indefiniteness defenses that were not considered in prior cases. The remaining claim terms identified by Enovsys do not require construction. Enovsys has not shown these terms present any claim construction issues material to infringement or invalidity, or any other reason these terms should be construed in this case.

For the reasons below, each of Verizon's proposed constructions should be adopted, and Enovsys's constructions should be rejected.

## II.      COLLATERAL ESTOPPEL (ISSUE PRECLUSION)

Collateral estoppel, also known as issue preclusion, "protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Collateral estoppel promotes fairness and certainty, while preventing the wasteful expenditure of resources on issues already resolved through adversarial proceedings. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Montana v. United States*, 440 U.S. 147, 153-54 (1979). In patent infringement cases, collateral estoppel provides more uniform treatment of patents across jurisdictions and discourages forum shopping by litigants unhappy with prior rulings.

It is well settled that "even arguably erroneous judgments have preclusive effect if the requirements for collateral estoppel are satisfied." *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1296 (5th Cir. 1995) (collecting cases); *see also DeShazo v. Nations Energy Co.*, 286 F. App'x 110, 116 (5th Cir. 2008) (refusing to consider argument that prior decision was incorrect); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 937 F.3d 1359, 1379 (Fed. Cir. 2019) ("A collateral estoppel determination is based on what the prior court ruled, and the prior court's ruling cannot be dissected to determine whether it was somehow based on an incorrect legal or factual basis."); *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 815 (E.D. Tex. 2014) ("Even if the statements by the district court reflect an incorrect legal analysis of the '516 patent, the statements pointed to by DietGoal are not sufficient to defeat the application of principles of collateral estoppel in this case.").

"[I]f there are two prior inconsistent judgments, only the last judgment has estoppel effect." *Reimer v. Smith*, 663 F.2d 1316, 1327 (5th Cir. 1981); *see also Texas v. Am. Tobacco Co*, 441 F. Supp. 3d 397, 426 (E.D. Tex. 2020) ("When multiple courts have previously rendered a judgment addressed to the same issue, a subsequent court may give preclusive effect *only* to the

decision of the final court to render judgment."). By applying this "last-in-time rule," courts ensure that finality is achieved and parties are encouraged to appeal inconsistent judgments directly rather than attack them collaterally before another court. *See Am. Tobacco*, 441 F. Supp. 3d at 426 ("The decision is not binding because it is correct; it is binding because it is last. . . . If an aggrieved party believes that the second court erred . . . , then the proper avenue of redress is appeal of the second court's judgment, not collateral attack in a third court.") (quoting *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1530 (9th Cir. 1985)).

Collateral estoppel has been applied specifically to the issue of claim construction to bar patent owners from relitigating the meaning of claim terms that were construed in prior proceedings involving the same or related patents. *See Nestlé USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351-52 (Fed. Cir. 2018) (vacating and remanding decision that failed to apply collateral estoppel and adopt claim constructions from a prior proceeding involving a related patent with the same claim terms); *e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 726-27 (Fed. Cir. 2014) (holding that district court correctly applied collateral estoppel to adopt a claim construction from a prior case involving the same patent and claim limitation); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1310-11 (Fed. Cir. 2001) (holding that district court correctly applied collateral estoppel to adopt claim constructions from a prior case involving a related patent with the same claim terms); *Mobile Telcoms. Techs., LLC v. ZTE (USA) Inc.*, No. 2:13-cv-946-JRG-RSP, 2016 U.S. Dist. LEXIS 48766, at *64-70 (E.D. Tex. Apr. 12, 2016) (holding in the alternative that collateral estoppel applied for two terms based on the Court's claim construction/indefiniteness determinations in a prior case); *TM Patents, L.P. v. IBM*, 72 F. Supp. 2d 370, 375-79 (S.D.N.Y. 1999) (collateral estoppel barred patent owner from relitigating the meaning of claim terms construed in prior case that settled during trial).

Regional circuit law provides the general standard for collateral estoppel and Federal Circuit law governs aspects of the analysis that are particular to patent law. *See Ohio Willow Wood*, 735 F.3d at 1342; *Nestlé*, 884 F.3d at 351 ("We apply our precedent on collateral estoppel when claim construction is involved."). In the Fifth Circuit, collateral estoppel applies if: "(1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004).[1] Here, all three elements are satisfied and collateral estoppel bars Enovsys from relitigating the claim construction issues decided in the AT&T case.

## A.      Identical claim construction issues were decided in the AT&T case

The first element of collateral estoppel is satisfied because identical issues of claim construction were decided in the AT&T case. Specifically, the AT&T court decided the meaning of the following claim terms at issue in the present case: "preauthorized," "mobile remote unit," "at the network," and "continuously tracked." Ex. A at 56-57.

In some instances, Enovsys asserts the same patent claims containing these terms that it previously asserted in the AT&T case. Additionally, Enovsys asserts claims from related patents not asserted in the AT&T case that contain these same terms. It is immaterial that some of these patent claims were not asserted in the AT&T case. Federal Circuit precedent makes clear that collateral estoppel may apply where the identical issue was previously decided for different

---

[1] A fourth factor recognized in some cases—whether there are any special circumstances that make it unfair to apply the doctrine—is only considered in cases involving *offensive* collateral estoppel. *Bradberry v. Jefferson County*, 732 F.3d 540, 548 (5th Cir. 2013). That factor does not apply here because this case involves *defensive* collateral estoppel, in which the defendant (Verizon) seeks to bar the plaintiff (Enovsys) from relitigating an issue on which the plaintiff has lost against a different defendant (AT&T) in a prior case.

claims in the same or related patents. *See Nestlé*, 884 F.3d at 1351-52 (different claims in related patents) ("Importantly, our precedent makes clear that collateral estoppel is not limited to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply.") (cleaned up); *e.Digital*, 772 F.3d at 726-27 (different claims in same patent); *Ohio Willow Wood*, 735 F.3d at 1342 ("Our precedent does not limit collateral estoppel to patent claims that are identical."); *Mycogen*, 252 F.3d at 1310 (different claims in related patents) ("Collateral estoppel also applies to common issues in actions involving different but related patents.").[2]

There are four asserted patents that include claim terms subject to collateral estoppel: the '461, '273, '188, and '078 patents. All of these patents, which include the '461 and '273 patents litigated in the AT&T case, are formally related and have substantively identical specifications. This is undisputed. Dkt. 77 at 14.

There is no new intrinsic evidence that changes the claim construction analysis for the terms previously construed in the AT&T case. The patent specifications are the same, as noted above, and the prosecution history that Enovsys cites in its opening brief was expressly considered by the court in the AT&T case. *Compare* Dkt. 77 at 19-20 *with* Ex. B at 19-21. Nor has Enovsys presented any new extrinsic evidence, such as expert testimony, regarding the terms previously construed in the AT&T case. Consequently, the "identical issue" element of collateral estoppel is satisfied for these claim terms.

---

[2] Even when collateral estoppel is not at issue, if multiple patents "derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005).

**B.     These claim construction issues were actually litigated in the AT&T case**

The second element of collateral estoppel is satisfied because Enovsys actually litigated these same claim construction issues in the AT&T case. These issues were thoroughly addressed in the claim construction briefing (130 pages), Exs. C-G, at a half-day *Markman* hearing, Exs. H-J, and in the AT&T court's claim construction orders (43 pages), Exs. B, K. The AT&T court's claim constructions were incorporated into the jury instructions, Ex. A at 56-57, and referenced throughout trial. Exs. L-1 at 33-34, 78-79; L-2 at 15, 39-42, 48-49, 52, 56-57, 66-68, 74; L-3 at 35; L-4 at 57, 98-99; L-5 at 19-20, 74, 98-99, 105, 130-31. Not only were these same issues actually litigated in the AT&T case, but also the AT&T court considered and rejected many of the same arguments Enovsys repeats in the present case. Exs. B, C, E, G, H, K.

**C.     Determination of these claim construction issues was a necessary part of the judgment in the AT&T case**

The third element of collateral estoppel is satisfied because the AT&T court's determination of these claim construction issues was necessary to the judgment in the prior case.

The AT&T court's claim construction order was a sufficiently final "judgment" to satisfy this element of collateral estoppel. The jury in the AT&T case was instructed that the court had already decided the meaning of these claim terms and that the jury must accept the court's constructions as correct. Ex. A at 56-57; Ex. L-1 at 33-34; Ex. L-5 at 130-31. Courts, including this one, have applied collateral estoppel based on claim construction orders in prior cases, even if the prior cases settled before a jury verdict. *See e.Digital*, 772 F.3d at 725 (affirming district court's application of collateral estoppel to claim construction where prior case settled after *Markman* order); *Mobile Telcoms.*, 2016 U.S. Dist. LEXIS 48766, at *64-70; *Curtiss-Wright Flow Control Corp. v. Z & J Techs. GmbH*, 563 F. Supp. 2d 1109, 1121-22 (C.D. Cal. 2007); *Edberg v. CPI-The Alternative Supplier, Inc.*, 156 F. Supp. 2d 190, 195 (D. Conn. 2001); *TM Patents*, 72 F. Supp. 2d at 375-77.

Additionally, the AT&T court's rulings on these same claim construction issues were necessary to the jury verdict against Enovsys. Claim construction is the first step in any invalidity or infringement analysis. *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998). Enovsys and AT&T repeatedly referenced the court's claim constructions throughout trial. Exs. L-1 at 78-79; L-2 at 15, 39-42, 48-49, 52, 56-57, 66-68, 74; L-3 at 35; L-4 at 57, 98-99; L-5 at 19-20, 74, 98-99, 105. As noted above, the AT&T court instructed the jury to apply the claim constructions from its *Markman* order. Ex. A at 56-57; Ex. L-1 at 33-34; Ex. L-5 at 130-131. The jury applied those claim constructions and found every asserted claim invalid and/or not infringed. Ex. M. The court denied Enovsys's JMOL motions and entered a final judgment against Enovsys based on the jury's verdict. Ex. N.

A final judgment of a federal trial court is preclusive unless and until that judgment is modified or reversed on appeal. *Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co. of Vidalia, Ga.*, 510 F.2d 272 (5th Cir. 1975) (per curiam); *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1382 (Fed. Cir. 1999). The final judgment in the AT&T case was affirmed on appeal. *Enovsys LLC v. AT&T Mobility LLC*, 678 Fed. Appx. 1025 (Fed. Cir. 2017).

Consequently, collateral estoppel bars Enovsys from relitigating the claim construction issues decided in the AT&T case. This Court should adopt the claim construction rulings from the AT&T case, as further addressed below. *See infra* Section IV.A.

## III.    THE '159 PATENT

The '159 patent is the earliest Enovsys patent. Enovsys previously asserted claim 1 against Sprint/Nextel, but did not assert any claims of the '159 patent against AT&T. In this case, Enovsys is asserting claims 1, 8, and 11 of the '159 patent.

A. **Claims and terms that are indefinite**

The asserted claims of the '159 patent are indefinite and invalid. These indefiniteness defenses were not adjudicated previously.

1. **'159 claim 1 (mixed apparatus-method claim)**

A patent claim that recites both an apparatus (or system) and a method of using that apparatus is indefinite because it is ambiguous whether the claim is infringed when the apparatus is made or sold, or only when it is used. *See Rembrandt Data Technologies, LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011); *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005); *UltimatePointer, LLC v. Nintendo Co., Ltd.*, No. 6:11-cv-496-LED, 2013 U.S. Dist. LEXIS 74276, at *63-65 (E.D. Tex. May 28, 2013) (holding mixed apparatus-method claims indefinite); *Ariba, Inc. v. Emptoris, Inc.*, No. 9:07-cv-90, 2008 U.S. Dist. LEXIS 59862, at *20-25 (E.D. Tex. Aug. 7, 2008) (same).

In *Rembrandt*, the Federal Circuit held invalid an apparatus claim that recited a series of structural elements (first buffer means, fractional encoding means, second buffer means, and trellis encoding means) followed by a method step: "transmitting the trellis encoded frames." *Rembrandt*, 641 F.3d at 1339. The patentee argued that the claim was not indefinite because the final limitation should be understood as a structural element, "*transmitter section for* transmitting the trellis encoded frames." *Id.* The Federal Circuit rejected this argument and held the claim invalid for indefiniteness, explaining that "courts may not redraft claims, whether to make them operable or to sustain their validity." *Id.*

Claim 1 of the '159 patent is analogous in that it blends the structural limitations of an apparatus claim with a method step. Claim 1 is directed to a system comprising three structural elements: [a] "space satellites and terrestrial stations," [b] "ground control stations," and [c] a "call receiver or pager." Claim 1, however, also recites a method step at the end: [d] "the system

8

divulging to certain or all callers the global location of a callee in possession of the said call receiver whi[l]e blocking such information from being divulged to certain or all other callers." This final limitation is directed to using the system and is not merely a functional description of certain claimed features of the system.

Element [d] recites actions, not mere capabilities. The system, which is already structurally defined in elements [a]-[c], is "divulging" and "blocking…from being divulged" the global location of a callee. Claim 1 does not recite the system "capable of divulging/blocking," or "for divulging/blocking," or "adapted for the purpose of divulging/blocking," or "having means to divulge/block" such information. In this respect, element [d] is different from other claim limitations in the '159 patent that recite capabilities or means for performing a function.

That claim 1 of the '159 patent recites actions, and not merely capabilities of the claimed system, makes this case analogous *Rembrandt*. It also distinguishes this case from other Federal Circuit cases that declined to invalidate claims on this basis. For example, unlike claim 1 of the '159 patent, the apparatus claim in *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008), was "clearly limited to a pipelined processor possessing the recited structure and ***capable*** of performing the recited functions." *Id.* at 1375 (emphasis in original). Similarly, the apparatus claims at issue in *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270 (Fed. Cir. 2012), used functional language to describe capabilities of the claimed apparatus: "the mobile station comprising: an arrangement ***for reactivating*** the link with the first base station if the handover is unsuccessful." *Id.* at 1273 (emphasis added).

Here, the requirement that the system is "divulging" global location information to certain callers and "blocking such information from being divulged" to other callers creates ambiguity in claim 1. The activity required by element [d] makes it impossible to determine with reasonable certainty when claim 1 is infringed. Accordingly, Claim 1 is invalid under § 112, ¶ 2

9

because it recites an indefinite mix of both apparatus elements and a method step, and fails to

notify the public whether the method step must be performed in order for infringement to occur.

Dependent claims 8 and 11, which include the apparatus and method limitations of claim 1, are

invalid for at least this same reason.

> **2.     '159 claim 11 ("means to activate or deactivate the positioning disclosure feature from the paging network by transmitting specific information to the paging network that will enable the blocking of none, certain or all users to the global location of the call receiver")**

The parties agree this is a means-plus-function phrase governed by § 112, ¶ 6, and they

agree the claimed function is recited in the claim limitation itself. *See* Dkt. 77, at 12. This phrase

is indefinite because the recited function is implemented by software on the call receiver, and the

'159 patent specification fails to disclose an algorithm to perform the recited function. *See* Dkt.

77-10, ¶¶ 20, 58-69; *Triton Tech. of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378

(Fed. Cir. 2014) ("Failure to disclose the corresponding algorithm for a computer-implemented

means-plus-function term renders the claim indefinite."); *Digital Retail Apps, Inc. v. Sam's Club*

*West, Inc.*, No. 2:21-CV-00184-JRG-RSP, Dkt. 58 at 15-16 (E.D. Tex. Mar. 1, 2022) (Ex. P).

The heart of the parties' dispute regarding this limitation is whether the recited function is

implemented by software running on a general purpose computer. Verizon's technical expert, Dr.

Wicker, opined that it is. *See* Dkt. 77-10, ¶¶ 20, 62-63. Enovsys in its brief, however, argues the

recited function is performed by hardware alone—specifically, the "call receiver or any relevant

terrestrial communication device"—and therefore "fail[ure] to identify an algorithm is

irrelevant." Dkt. 77, at 12-13. Enovsys is wrong.

As an initial matter, Enovsys's argument that the function can be performed by "any

relevant terrestrial communication device" is at odds with the plain language of claim 11. Claim

11 states that the means to perform the function is part of the "call receiver," not some other

device. *See* Dkt. 77-1 at 10:14 ("The call receiver according to claim 8 with means to . . . .").

As for the "call receiver," Dr. Wicker opined that it cannot perform the computer-implemented function recited in claim 11 without special software. Dkt. 77-10, ¶¶ 62-63. The full recited function is not merely to "activate or deactivate the positioning disclosure feature," but to activate or deactivate that feature "from the paging network *by transmitting specific information to the paging network that will enable the blocking of none, certain or all users to the global location of the call receiver*." Moreover, Enovsys admits that the recited "positioning disclosure feature" is "*a software-enabled feature*." Dkt. 77, at 13. Using Enovsys's proposed construction of "positioning disclosure feature," claim 11 reads: "The call receiver according to claim 8 with means to activate or deactivate the [software-enabled feature that allows a subscriber to allow or block the disclosure of the current location of the call receiver or pager] from the paging network by transmitting specific information to the paging network that will enable the blocking of none, certain or all users to the global location of the call receiver." Hardware alone cannot perform this function. Software is required. The "call receiver" or some component thereof must be specially programmed to perform the recited function pursuant to instructions from software. *See* Dkt. 77-10, ¶¶ 62-63.

When a function recited by a means-plus-function limitation is computer-implemented and a general-purpose computer cannot perform the function without special programming—as is the case here—the specification must disclose the structure in the form of an algorithm, or else the claim is indefinite. *See Triton Tech.*, 753 F.3d at 1378; *EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 621 (Fed. Cir. 2015). Dr. Wicker reviewed the specification and prosecution history for the '159 patent and found no algorithm disclosed to perform the function recited in claim 11. *See* Dkt. 77-10, ¶¶ 64-69.

Enovsys's expert, Dr. McAlexander, points to various passages in the specification for supposed support for Enovsys's construction, but those passages do not describe any algorithm

or provide any more detail than the description of the function as recited in claim 11. *See* Dkt. 77-9, ¶¶ 18-20; Dkt. 77-10, ¶¶ 65-67. Merely restating the function as recited in the claim is legally inadequate to disclose an algorithm for performing the claimed function. *See Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340-41 (Fed. Cir. 2008); *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382-83 (Fed. Cir. 2009); *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:18-cv-0042-JRG-RSP, 2019 WL 11023944, at *12 (E.D. Tex. Apr. 18, 2019) ("As to the algorithm, the two passages Uniloc has cited in its construction for an algorithm at most merely restate the claimed function. Such disclosure does not satisfy the algorithm requirements."); *Pi-Net Int'l Inc. v. JPMorgan Chase & Co.*, No. 12-282-SLR, 2014 U.S. Dist. LEXIS 66063, at *18 (D. Del. May 14, 2014).

Accordingly, because the specification fails to disclose any corresponding algorithm for this computer-implemented means-plus-function term, claim 11 of the '159 patent is indefinite.

### B.   Terms that do not require construction

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

Accordingly, district courts routinely decline to interpret claim terms where the terms sought to be defined by a party are readily understood. *See Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-CV-546-JRG, 2020 U.S. Dist. LEXIS 76751, at *29-*30 (E.D. Tex. May 1, 2020) ("The Court will not substitute one set of commonly understood terms with another set of commonly understood terms when a plain and ordinary meaning construction is sufficient.");

*Ultravision Techs. v. Holophane Eur.*, No. 2:19-cv-00291-JRG-RSP, 2020 U.S. Dist. LEXIS 198120, at *77 (E.D. Tex. Oct. 26, 2020) (Giving "unambiguous" and "easily understandable by a jury" terms their plain and ordinary meaning construction); *Star Envirotech, Inc., v. Redline Detection, LLC*, 2015 WL 12743875, at *3 (C.D. Cal. Apr. 30, 2015) (noting that "district courts are not required to step in and paraphrase each claim term" or "serve as all-purpose dictionaries."); *Moneysuite Co. v. Ins. Answer Ctr., LLC,* No. SACV 11–1847 AG (JPRx), 2013 WL 6925942, at *6 (C.D. Cal. Mar. 25, 2013) (declining to construe where the "claim itself provides a great deal of context").

Enovsys proposes construing numerous terms in the '159 patent that do not require construction in this case.[3] Enovsys has not shown that these terms present any claim construction issues material to infringement or invalidity, or any other reason why they should be construed in this case. Some of these terms are commonly understood terms. However, even alleged means-plus-function terms need not be construed in every case. For example, in the Sprint case, no construction was issued for the phrase "means to locate the global position of a . . . call receiver unit" in asserted claim 1 of the '159 patent. In the AT&T case, no construction was issued for the phrase "means for detecting an absence of communication with the remote receiving unit" in asserted claim 10 of the '461 patent. And in the present case, Enovsys previously asserted that

---

[3] These terms include: [Claim 1] "global position," "global location," "some of which are adapted for the purpose of transmitting paging information," "positioning information," "call receiver or pager," "means to resolve a global position from satellites or earth based communication means," "callers," "callee," "whi[l]e blocking such information from being divulged to certain or all other callers"; [Claim 8] "connecting means to connect satellite signals to the satellite receiving end and terrestrial signals to the terrestrial receiving end," "satellite receiving means for receiving and processing satellite positioning and message signals," "terrestrial receiving means for receiving and processing terrestrial positioning and message signals," "relevant means to resolve a global position from data received from either the satellite or terrestrial receiving ends"; [Claim 11] "positioning disclosure feature." *See* Dkt. 77 at 2-14.

the phrase "said portable mobile handset able to resolve a geographic position . . . " is a means-plus-function phrase, but now agrees it need not be construed. *See* Dkt. 73 (disputed term 28).

Not only is it unnecessary to construe these terms, but also in certain instances adopting Enovsys's proposed constructions would introduce error or ambiguity. For example:

- **"global position"** (Dkt. 77 at 2-3): Enovsys proposes a 30-word construction, apparently seeking to limit this simple term to positions or locations "estimated with a high degree of accuracy" – a phrase not used, let alone defined, in the specification. However, the specification teaches that "global position" also includes less accurate positions such as an "active area" within a paging network. *See* Dkt. 77-1 at 1:20-27.

- **"some of which are adapted…"** (Dkt. 77 at 4-5): Enovsys proposes a multi-sentence construction including a negative limitation that is contrary to the plain language of claim 1 and its dependent claims. Dependent claim 8 requires means for receiving and processing both "positioning" *and* "message" signals from both satellites *and* terrestrial stations. Dependent claim 9 requires concurrently processing satellite *and* terrestrial based "message" *and* "positioning" signals. *See also* Dkt. 77-1 at 5:55-57 ("This signals could either be *paging message signals* or global *positioning signals*."). Construing claim 1 to *not* require satellites adapted for transmitting paging message signals is contrary to the language of claim 1 read together with its dependent claims.

- **"call receiver or pager"** (Dkt. 77 at 5-6): Enovsys proposes importing elements of size, portability, and functionality that are not required by the plain language of the claim. Verizon does not seek to limit this phrase to "pager."

- **"positioning disclosure feature"** (Dkt. 77 at 13-14): Enovsys proposes a construction tied to the "*current* location" of the call receiver or pager, but the plain language of '159 claim 11 imposes no such restriction. Moreover, in '078 claims 1 and 17, "current location" is a separately recited claim term that does not need to be incorporated into a definition of "positioning disclosure feature." *See* Dkt. 77-6 at 9:66-10:17, 11:20-37.

Enovsys's proposed construction for "**whi[l]e blocking such information from being divulged to certain or all other callers**" (Dkt. 77 at 7-9) is also both unnecessary and erroneous. The parties agree "white" is a typographical error and means "while." Beyond that, there is no need to "improve the readability" of this claim limitation by redrafting it. Dkt. 77 at 8. Enovsys seeks to change this claim limitation from an active method step to merely a description of a capability of the system, in an effort to cure the indefiniteness described above. *See supra* Section III.A.1. Courts may not redraft claims for this purpose. *Rembrandt*, 641 F.3d at 1339.

Most of Enovsys's proposed means-plus-function constructions are unnecessary and benign. The exceptions are '159 claim 11, addressed in Section III.A.2 above, and the "**means to resolve a global position . . .**" terms in '159 claims 1 and 8 (Dkt. 77 at 6-7, 11-12). For the latter, Enovsys's proposed construction omits one of the structural elements—Read Only Memory (ROM) [110]—that the specification discloses for performing the recited function. Enovsys has not identified any issue of infringement or invalidity that might be impacted by construction of these particular MPF limitations. However, if the court determines they should be construed, Verizon's alternative proposed construction should be adopted because it more completely and accurately tracks the structure disclosed in the specification. *See Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc*., 412 F.3d 1291, 1298 (Fed. Cir. 2005). The specification explains that the ROM [110] of the call receiver is structure that performs at least the "means to resolve a global position from satellites" claimed function. *See* Dkt. 77-1 at 6:2-10. Enovsys points to an additional use of ROM [110] that comes after the global position is resolved (*Id.* at 7:34-37) to suggest that ROM [110] is not required here, but ignores the earlier reference in the specification.

## IV.    THE '461, '273, '188, AND '078 PATENTS

The '461 patent is a continuation-in-part of the '159 patent. The specification of the '461 patent includes language that is not in the '159 patent. The '273, '188, and '078 patents are related to the '159 and '461 patents and share a substantively identical specification with the '461 patent. This is undisputed. Dkt. 77 at 14.

Enovsys previously asserted claims of the '461 patent against Sprint/Nextel and claims of the '461 and '273 patents against AT&T. In this case, Enovsys is asserting claim 28 of the '461 patent, claim 1 of the '273 patent, claims 11-14, 18, and 21-23 of the '188 patent, and claims 1, 17-19, 22, 29, and 32 of the '078 patent.

**A.      Terms for which Enovsys is collaterally estopped from seeking its proposed construction**

For the following claim terms, Verizon proposes the same constructions issued in the AT&T case, whereas Enovsys proposes constructions previously litigated and rejected by the AT&T court or entirely new constructions different from the ones it previously proposed. This Court should adopt the AT&T court's claim constructions as a matter of collateral estoppel. Alternatively, the Court should adopt those prior constructions for the same reasons explained in the AT&T court's claim construction orders and related briefing. *See* Exs. B, D, F, G, K.

**1.      "mobile remote unit"**

| Enovsys | Verizon |
|---|---|
| "mobile remote unit" means: portable mobile telecommunication device, such as a cellular telephone, pager, or other handheld information receiving device | "mobile remote unit" means: portable wireless telecommunications device |

The term "mobile remote unit" is recited in claim 1 of the '273 patent and claims 1 and 17 of the '078 patent. Verizon's proposed construction matches the one issued in the AT&T case for the identical claim term. *See* Ex. A at 57; Ex. B at 30-35. This Court should adopt that prior construction as a matter of collateral estoppel, for the reasons explained in Section II above.

In the Joint Claim Construction and Prehearing Statement, Enovsys proposed the same construction it proposed in the AT&T case, which the AT&T court considered and rejected. *Compare* Dkt. 73 (disputed term 16) *with* Ex. B at 30-35. In its claim construction brief, Enovsys abandons its prior position and proposes a new construction incorporating language from the "Background of the Invention" section of the patent specification. Dkt. 77 at 16-17. Enovsys had its opportunity to litigate this issue in the AT&T case. Collateral estoppel bars Enovsys from seeking a do-over in this case, regardless of its criticisms of the AT&T court's construction. *See Recoveredge*, 44 F.3d at 1296; *DeShazo*, 286 F. App'x at 116; *Intellectual Ventures I*, 937 F.3d

at 1379; *DietGoal*, 70 F. Supp. 3d at 815.

Enovsys further contends that the terms "mobile remote unit" and "portable mobile handset" should have the same construction "because the specification indicates that the two terms (or close variants of them) are intended to be read as interchangeable." Dkt. 77 at 16. Assuming these two terms are interchangeable, then the claim construction issue is the same and the AT&T court's prior construction of "mobile remote unit" should be applied for both terms. *See Ohio Willow Wood*, 735 F.3d at 1342 (rejecting argument that the mere existence of different claim language is sufficient to overcome collateral estoppel). Otherwise, there is no need to construe the term "portable mobile handset."

### 2.   "preauthorized" and "authorized"

| Enovsys | Verizon |
|---------|---------|
| "preauthorized resource" means: resource authorized to submit a request in advance of determining whether the request will be granted<br><br>"authorized resource" means: resource authorized to submit a request for the location information of the mobile remote unit<br><br>"authorized communication resources" means: communication resources authorized to submit a request for the position of the call receiver | "preauthorized" and "authorized" mean: having a code specific to a mobile device that permits a request for that device's location to be made<br><br>"resource" and "communication resources" do not require construction |

The term "preauthorized" is recited in claim 28 of the '461 patent. Verizon's proposed construction matches the one issued in the AT&T case for the identical term in the same claim. *See* Ex. A at 56-57; Ex. B at 16-22. This Court should adopt that prior construction as a matter of collateral estoppel, for the reasons explained in Section II above.

Enovsys's proposed construction for "preauthorized" is the same construction previously considered and rejected by the AT&T court. *Compare* Dkt. 77 at 17 *with* Ex. B at 16-22. Enovsys already litigated this identical issue and lost. Indeed, Enovsys even challenged the AT&T court's construction of "preauthorized" on appeal, but the Federal Circuit affirmed the

judgment and in so doing necessarily rejected Enovsys's position. *See* Ex. O at 3; *Enovsys*, 678

Fed. Appx. 1025. Collateral estoppel bars Enovsys from seeking a do-over in this case,

regardless of its criticisms of the AT&T court's construction. *See Recoveredge*, 44 F.3d at 1296;

*DeShazo*, 286 F. App'x at 116; *Intellectual Ventures I*, 937 F.3d at 1379; *DietGoal*, 70 F. Supp.

3d at 815. Expanding the term to be construed from "preauthorized" to "preauthorized resource,"

as Enovsys proposes, does not somehow avoid collateral estoppel—especially as Enovsys does

not even construe the additional word "resource."

      The term "authorized" is recited in claim 1 of the '273 patent and claim 11 of the '188

patent. The term "authorized" should have the same construction as "preauthorized" in claim 28

of the '461 patent because these patents are related, share a substantively identical specification,

and use the terms "authorized" and "preauthorized" interchangeably to refer to the same concept.

For example, the '461 patent is titled "*Authorized* Location Reporting Paging System" and its

specification uses the term "authorized" in describing the claimed invention, while its claims use

the term "preauthorized" instead of "authorized" to refer to the same concept. *See, e.g.*, Dkt. 77-2

at 1:1, 4:51-62, and claims 1, 6, 11, 18, 25, and 28. As another example, claim 28 of the '461

patent recites allowing or denying access for a "preauthorized" resource, whereas claim 11 of the

'188 patent, which is a continuation of the '461 patent, recites allowing or denying access for an

"authorized" resource. These two claims use "preauthorized" and "authorized" to describe the

same concept. The prosecution history includes further examples of these terms being used

interchangeably. *See, e.g.*, Dkt. 77-3 (1/19/01 Response) at 10-13. Finally, in the AT&T case,

Enovsys recognized that the terms "preauthorized" and "authorized" refer to the same concept

and argued that both terms should have the same claim construction. *See* Ex. C at 21 ("[T]he

explanations above regarding the term 'pre-authorized' recited in the claims of the '461 patent

apply equally to 'authorized' recited in claim 1 of the '273 patent."); Ex. E at 19 ("'Authorized'

should be construed as set out above for 'preauthorized'").

Collateral estoppel can apply where claims in related patents use slightly different language to describe the same invention. *See Nestlé*, 884 F.3d at 1351-52; *Ohio Willow Wood*, 735 F.3d at 1342. Here, the AT&T court's construction of "preauthorized" should apply for the term "authorized" as well. The meaning of these two terms in the patents is the same issue, as Enovsys previously acknowledged. Even if collateral estoppel did not extend to "authorized," that term should still be construed consistently with "preauthorized" for the reasons above. Expanding the term to be construed from "authorized" to "authorized resource" or "authorized communication resources" would not change this result—especially as Enovsys does not even construe the additional words "resource" and "communication resources."

### 3. "at the network"

| Enovsys | Verizon |
|---|---|
| "to establish its location at the network" means: to bring about or bring into existence its location at the network of communication resources | "at the network" means: at the network level, rather than the mobile device level <br><br> "to establish its location" does not require construction |

The term "at the network" is recited in claim 28 of the '461 patent. Verizon's proposed construction matches the one issued in the AT&T case for the identical term in the same claim. Ex. A at 56-57; Ex. B at 7-16. This Court should adopt that prior construction as a matter of collateral estoppel, for the reasons explained in Section II above.

This is the third time Enovsys seeks to litigate the meaning of this claim limitation, and the third construction Enovsys has proposed. In the Sprint case, Enovsys argued that "at the network" means "at the network level." Ex. B at 15. In the AT&T case, Enovsys argued that "at the network" means "in a group or collection of interconnected telecommunication devices or resources." Ex. B at 13. Now Enovsys argues for something completely different. Collateral estoppel bars Enovsys from seeking a do-over in this case, regardless of its criticisms of the

AT&T court's construction. *See Recoveredge*, 44 F.3d at 1296; *DeShazo*, 286 F. App'x at 116;

*Intellectual Ventures I*, 937 F.3d at 1379; *DietGoal*, 70 F. Supp. 3d at 815.

Expanding the phrase to be construed from "at the network" to "to establish its location at

the network," as Enovsys proposes, is unnecessary because "to establish its location" is a simple,

non-technical phrase that does not require construction. Moreover, expanding the phrase to be

construed in this manner would not avoid collateral estoppel for the key portion that reads "at the

network"—especially as Enovsys's new proposed construction simply repeats "at the network."

Even if the Court were to adopt Enovsys's construction for "to establish its location," collateral

estoppel still applies to "at the network," so the resulting construction would be: "to bring about

or bring into existence its location at the network level, rather than the mobile device level."

### 4.    "continuously tracked"

| Enovsys | Verizon |
|---|---|
| "kept track of without interruption or continuously tracked by the communications system" means: kept track of (i.e., observed or known about) by the communications system without interruption | "continuously tracked" means: provided to the network by the mobile remote unit without interruption |

The term "continuously tracked" is recited in claim 29 of the '078 patent. Verizon's

proposed construction matches the one issued in the AT&T case for the identical claim term in

the related '461 patent. Ex. A at 56-57; Ex. K at 1-2. This Court should adopt that prior

construction as a matter of collateral estoppel, for the reasons explained in Section II above.

Enovsys's proposed construction is nearly identical to the one it proposed in the AT&T

case. There, Enovsys argued that "continuously tracked" means "kept track of (i.e. observed or

known about) without interruption." Ex. G at 1-6. The AT&T court considered and rejected

Enovsys's position. Ex. K at 1-2. Thus, Enovsys already litigated this identical issue and lost.

Collateral estoppel bars Enovsys from seeking a do-over in this case, regardless of its criticisms

of the AT&T court's construction. *See Recoveredge*, 44 F.3d at 1296; *DeShazo*, 286 F. App'x at

116; *Intellectual Ventures I*, 937 F.3d at 1379; *DietGoal*, 70 F. Supp. 3d at 815.

Collateral estoppel can apply where claims in related patents use slightly different language to describe the same invention. *See Nestlé*, 884 F.3d at 1351-52; *Ohio Willow Wood*, 735 F.3d at 1342. Here, the AT&T court's construction of "continuously tracked" should apply to related claim 29 of the '078 patent even though that claim uses more words to describe the same concept. Expanding the phrase to be construed to include "kept track of without interruption" would not avoid collateral estoppel because, as Enovsys admits, that alternative phrasing describes the same concept. *See* Dkt. 77 at 25 ("Thus, 'kept track of without interruption' and 'continuously tracked' are best interpreted as two different phrases for describing the same thing . . . ."). Nor should the construction be any different as a result of '078 claim 29's reference to "the communication system." In the AT&T case, the court construed "continuously tracked" in '461 claim 6, which also referenced "the [communication] system."[4] *See* Dkt. 77-2 at claim 6; Ex. G at 1-6. The AT&T court determined the mobile remote unit's location is "continuously tracked" by the communication system by the location being "provided to the network by the mobile remote unit without interruption." Ex. K at 1-2. Thus, Verizon's proposed construction should be adopted regardless of whether the phrase being construed is "continuously tracked" or the longer phrase proposed by Enovsys.

**B.     Claims and terms that are indefinite**

Claim 19 of the '078 patent and claims 11, 13, and 18 of the '188 patent are indefinite and invalid. These indefiniteness defenses were not adjudicated previously.

---

[4] In '461 claim 6, "the system" in the phrase "wherein the location of the mobile is continuously tracked within the system" refers to the "communication system" recited in the claim's preamble.

### 1.    '078 claim 19 ("recent")

Claim 19 of the '078 patent is indefinite because a person of ordinary skill in the art ("POSITA") would not understand with reasonable certainty the scope of "recent" as that term is used in the claim limitation, "the control station is further for determining that the current location information stored on the network is recent." *See* Dkt. 77-10, ¶¶ 94-102; *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014); *CA, Inc. v. Netflix, Inc.*, Case No. 2:21-CV-00080-JRG-RSP, 2021 U.S. Dist. LEXIS 221133, at *17-18, *38-48 (finding "minimizing" time and "maximizing" rate terms indefinite). Enovsys argues incorrectly that this subjective and undefined term needs no construction.

Dr. Wicker opined that there is no accepted meaning of the term "recent" in the art. Dkt. 77-10, ¶ 97. In some contexts, "recent" refers to events that occurred mere seconds earlier, whereas in other contexts, "recent" refers to events that occurred minutes, hours, days, or even months or years in the past. *Id.* Moreover, even in the same context, "recent" is purely subjective and can mean different things to different people—what is "recent" for one may not be "recent" for another. *Id.* The term "recent" fails to inform those skilled in the art as to the boundary between information that qualifies as "recent" and that which does not. *Id.*

The Federal Circuit has explained: "Where, as here, we are faced with a 'purely subjective' claim phrase, we must look to the written description for guidance." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014). But here the specification is silent. The word "recent" is absent from the specification and nothing in the intrinsic record defines the scope of "recent" as that term is used in claim 19, or discloses objective boundaries as to the time period that is being claimed, or provides any standard or method a POSITA could use to ascertain with reasonable certainty whether particular location information stored on a network is "recent" or not in this context. Dkt. 77-10, ¶ 98. This lack of disclosure renders the

claim term "recent" indefinite. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018) ("In light of the lack of objective boundary or specific examples of what constitutes 'minimal' in the claims, specification, and prosecution history, the district court properly considered and relied on extrinsic evidence. Relying on the specification's lack of explanation and specific examples of this term, HP's expert . . . opined that the patent does not inform a skilled artisan of the meaning of 'archive exhibits minimal redundancy' with reasonable certainty."); *CA Inc.*, 2021 U.S. Dist. LEXIS 221133, at *42.

The language of claim 19 itself does not inform a POSITA as to the scope of the term "recent." Dkt. 77-10, ¶ 99. While claim 19 recites "determining that the current location information stored on the network is recent," the claim does not indicate how that determination is calculated or how it is used by the system. *Id.* Nothing in claim 19, or any other claim of the '078 patent, informs a POSITA as to the boundary between information that qualifies as "recent" and that which does not. *Id.*

The patent specification likewise does not inform a POSITA as to the scope of the term "recent." Dkt. 77-10, ¶ 100. Enovsys's expert concedes no definition is provided. Dkt. 77-9, ¶ 29 ("In my opinion, there is no statement in the intrinsic reference that provides a special definition of 'recent' . . . ."). The specification does not define "recent," nor does it disclose any examples of location information stored on a network that are characterized as "recent." Dkt. 77-10, ¶ 100.

In several instances, the specification discloses that the location or position of the remote receiving unit is updated "periodically." *See, e.g.*, Dkt. 77-6 at 3:27-34, 4:11-22, 6:20-23, 8:48-61, 9:49-52; Dkt. 77-10, ¶ 100. However, the specification does not explain what time period is encompassed by the term "periodically." Dkt. 77-10, ¶ 100. One example describes updating location information periodically "[a]s a user travels from city to city or country to country," suggesting that the time between periodic updates might span multiple hours, days, or even

weeks. *See* Dkt. 77-6 at 4:11-22; Dkt. 77-10, ¶ 100. Other examples in the specification describe determining the location of a remote receiving unit if no update has occurred within "a pre-defined time period," or when the stored position information is "out of date." *See* Dkt. 77-6 at 3:63-4:2, 5:37- 40; Dkt. 77-10, ¶ 100. However, as with the terms "recent" and "periodically," the '078 patent fails to provide any example of a specific amount of time that would constitute "a pre-defined time period" or render stored location information "out of date." Dkt. 77-10, ¶ 100.

As noted above, Enovsys's expert agrees that the intrinsic record does not define the term "recent." Dkt. 77-9, ¶ 29. Dr. McAlexander points to a supposed plain and ordinary meaning of "recent"—"having lately come into existence or occurring a short while ago." *Id.* But this proposed plain and ordinary meaning only highlights the subjective nature of the term "recent" by defining it using other subjective terms of degree: "lately" and "a short while ago."

For these reasons, a POSITA at the time of the claimed invention would not have understood with reasonable certainty the scope of the term "recent" in claim 19 of the '078 patent, rendering this claim term and claim 19 indefinite.

## 2. '188 claim 13 (mixed apparatus-method claim)

As explained above, a patent claim that recites both an apparatus and a method of using that apparatus is indefinite. *See supra* Section III.A.1. Claim 13 of the '188 patent is indefinite for this reason.

Claim 13 depends from claim 11. Claim 11 is directed to an apparatus ("call receiver") comprising "a control unit," "an input," and "a privacy profile command." Whereas claim 11 recites a function of the privacy profile command ("to selectively deny or selectively accept to provide access to the position of the call receiver"), claim 13 recites a method step directed to actually using the privacy profile command. Specifically, claim 13 requires "the privacy profile command selectively denying or selectively accepting access to the information regarding the

position of the call receiver."

Claim 13 recites action, not mere capability. The privacy profile command, which was previously introduced in claim 11, must now be actively "denying or selectively accepting access to the information regarding the position of the call receiver." Unlike claim 11, claim 13 does not recite merely a capability of the privacy profile command "to selectively deny or selectively accept to provide access." Indeed, if both claims merely recited a capability of the privacy profile command, then dependent claim 13 would instead be invalid under 35 U.S.C. § 112, ¶ 4 for failing to "specify a further limitation" on independent claim 11.

### 3. '188 claim 11 ("privacy profile command to selectively deny or selectively accept to provide access to the position of the call receiver to less than all authorized communication resources")

Verizon contends this phrase is a means-plus-function phrase governed by § 112, ¶ 6 that uses the black box term "privacy profile command" as a substitute for "means." Verizon further contends this phrase is indefinite because the recited function is implemented by software on the call receiver and the '188 patent specification fails to disclose an algorithm to perform the recited function. *See* Dkt. 77-10, ¶¶ 20, 70-81; *Triton*, 753 F.3d at 1378.

Where a claim limitation does not use the word "means," there is a rebuttable presumption that § 112 ¶ 6 does not apply. "This presumption, however, does not permit patentees to freely engage in functional claiming while circumventing § 112(f) simply by avoiding the word 'means.'" *Egenera, Inc. v. Cisco Sys.*, 972 F.3d 1367, 1372-73 (Fed. Cir. 2020). The presumption is not strong and is overcome where "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015); *see also Egenera*, 972 F.3d at 1373; *Digital Retail Apps*, No. 2:21-CV-00184-JRG-RSP, at 15-16 (Mar. 1, 2022) (Ex. P.).

Here, the black box term "privacy profile command" is described by a specific function: "selectively deny or selectively accept to provide access to the position of the call receiver to less than all authorized communication resources." Dr. Wicker opined that "privacy profile command" is a generic term that does not convey a defined structure to a POSITA. Dkt. 77-10, ¶ 20. The term is equivalent to reciting "means" and is effectively a placeholder for any structure that is capable of performing the recited function. Dkt. 77-10, ¶ 29. Enovsys's construction, which recognizes that "privacy profile command" is "implemented by software on the call receiver," does not identify structure for performing the claimed function. That claim 11 elsewhere recites a structural component ("a call receiver") does not render "privacy profile command" sufficiently structural. *See Egenera*, 972 F.3d at 1374 ("Mere inclusion of a limitation within a structure does not automatically render the limitation sufficiently structural."). The relevant question is whether "privacy profile command" recites sufficient structure for performing the claimed function, which it does not. Accordingly, the presumption that this phrase is not governed by § 112 ¶ 6 is rebutted.

The next consideration is whether the specification of the '188 patent discloses corresponding structure to perform the function for this means-plus-function claim limitation. It does not. Here, the function is recited in claim 11: "selectively deny or selectively accept to provide access to the position of the call receiver to less than all authorized communication resources." This function is implemented by software on the call receiver, and the '188 patent specification fails to disclose an algorithm to perform the recited function, thus rendering the claim indefinite. *See* Dkt. 77-10, ¶¶ 20, 70-81; *Triton*, 753 F.3d at 1378; *Digital Retail Apps*, No. 2:21-CV-00184-JRG-RSP, at 15-16 (Mar. 1, 2022) (Ex. P).

Dr. Wicker opined that the recited function is computer-implemented and cannot be performed without special programming (software). Dkt. 77-10, ¶¶ 20, 74-75. While Enovsys

disputes that this is a means-plus-function limitation, it does agree that a "privacy profile command" is a "command or instruction, *implemented by software* on the call receiver." When a function recited by a means-plus-function limitation is computer-implemented and a general-purpose computer cannot perform the function without special programming—as is the case here—the specification must disclose the structure in the form of an algorithm, or else the claim is indefinite. *Triton Tech.*, 753 F.3d at 1378; *EON Corp.*, 785 F.3d at 621. Dr. Wicker reviewed the specification and prosecution history for the '188 patent and found no algorithm disclosed to perform the function recited in claim 11. Dkt. 77-10, ¶¶ 76-81. At most, the specification provides the same level of detail as the description of the function as recited in claim 11. Dkt. 77-10, ¶¶ 77-79. Merely restating the function as recited in the claim is legally inadequate to disclose an algorithm for performing the claimed function. *Finisar Corp.*, 523 F.3d at 1340-41; *Blackboard*, 574 F.3d at 1382-83; *Uniloc*, 2019 WL 11023944, at *12; *Pi-Net Int'l Inc.*, 2014 U.S. Dist. LEXIS 66063, at *18.

Accordingly, because the specification fails to disclose any corresponding algorithm for this computer-implemented means-plus-function term, claim 11 of the '188 patent is indefinite.

> **4.    '188 claim 18 ("an override to verify whether a location privacy profile that is used for accepting or denying access to the location information of said portable mobile handset permits the disclosure of said location information to at least a location requestor amongst said one or more communication resources submitting valid permission")**

Verizon contends this phrase is a means-plus-function phrase governed by § 112, ¶ 6 that uses the black box term "an override" as a substitute for "means." Verizon further contends this phrase is indefinite because the recited function is implemented by software and the '188 patent specification fails to disclose an algorithm to perform the recited function. *See* Dkt. 77-10, ¶¶ 20, 82-93; *Triton*, 753 F.3d at 1378.

As explained above, the presumption that § 112 ¶ 6 does not apply where "means" is not

used may be overcome where "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson*, 792 F.3d at 1349; *see also Egenera*, 972 F.3d at 1373. Here, the black box term "an override" is described by a specific function: "verify whether a location privacy profile that is used for accepting or denying access to the location information of said portable mobile handset permits the disclosure of said location information to at least a location requestor amongst said one or more communication resources submitting valid permission." Dr. Wicker opined that "an override" is a generic term that does not convey a defined structure to a POSITA. Dkt. 77-10, ¶ 20. The term is equivalent to reciting "means" and is effectively a placeholder for any structure that is capable of performing the recited function. Dkt. 77-10, ¶ 29. Enovsys's construction, which recognizes that "an override" is "a software-implemented feature," does not identify structure for performing the claimed function. *See Digital Retail Apps*, No. 2:21-CV-00184-JRG-RSP, at 15-16 (Mar. 1, 2022) (Ex. P) ("And even if the 'first communication module' is software, Plaintiff points to nothing that imparts any structural significance to the term, such as an algorithm or flow chart. Accordingly, the Court concludes § 112, ¶ 6 applies.") That claim 18 elsewhere recites a structure ("a portable mobile handset") does not render "an override" sufficiently structural. *Egenera*, 972 F.3d at 1374. The relevant question is whether "an override" recites sufficient structure to perform the claimed function, which it does not. Indeed, "an override" is not even associated with any structural element of claim 18. Thus, the presumption that this phrase is not governed by § 112 ¶ 6 is rebutted.

The next consideration is whether the specification of the '188 patent discloses corresponding structure to perform the function for this means-plus-function claim limitation. It does not. Dr. Wicker opined that the recited function is computer-implemented and cannot be performed without special programming (software). Dkt. 77-10, ¶¶ 20, 86-87. As noted above,

Enovsys has acknowledged that "an override" is "a software-implemented feature." When a function recited by a means-plus-function limitation is computer-implemented and a general-purpose computer cannot perform the function without special programming—as is the case here—the specification must disclose the structure in the form of an algorithm, or else the claim is indefinite. *Triton Tech.*, 753 F.3d at 1378; *EON Corp.*, 785 F.3d at 621. Dr. Wicker reviewed the specification and prosecution history for the '188 patent and found no algorithm disclosed to perform the function recited in claim 18. Dkt. 77-10, ¶¶ 88-93. At most, the specification provides the same level of detail as the description of the function as recited in claim 18. Dkt. 77-10, ¶¶ 89-91. Merely restating the function as recited in the claim is legally inadequate to disclose an algorithm for performing the claimed function. *Finisar Corp.*, 523 F.3d at 1340-41; *Blackboard*, 574 F.3d at 1382-83; *Uniloc*, 2019 WL 11023944, at *12; *Pi-Net Int'l Inc.*, 2014 U.S. Dist. LEXIS 66063, at *18.

Accordingly, because the specification fails to disclose any corresponding algorithm for this computer-implemented means-plus-function term, claim 18 of the '188 patent is indefinite.

### C.   Terms that do not require construction

Enovsys proposes construing several terms in the '461, '273, '188, and '078 patents that do not require construction, including: "call receiver" ('188 claim 11); "means for determining its position" ('188 claim 12); "portable mobile handset" ('188 claim 18); "authorization code" ('078 claims 1, 17); and "positioning disclosure feature" ('078 claims 1, 17). Enovsys has not shown that they present any claim construction issues material to infringement or invalidity, or any other reason why they should be construed in this case. Some of these terms are commonly understood terms. However, even means-plus-function terms need not be construed in every case. *See supra* Section III.B.

Additionally, in certain instances adopting Enovsys's proposed constructions would

introduce error or ambiguity. For example:

- **"authorization code"** (Dkt. 77 at 22-23): Envosys proposes a 24-word construction that confusingly repeats other claim language. Envosys's effort to inject ambiguity into this term is evident if one replaces "authorization code" in '078 claim 1 with Envosys's proposed construction. Moreover, there is no intrinsic support to limit "code" to the form of code (text/numbers/characters) that Envosys proposes, or to construe "authorization code" is a way that is inconsistent with the construction of "preauthorized" and "authorized" that applies as a matter of collateral estoppel. *See supra* Section IV.A.2.

- **"call receiver"** (Dkt. 77 at 14): Envosys proposes importing elements of size, portability, and functionality that are not required by the plain language of this term.

- **"portable mobile handset"** (Dkt. 77 at 15-16): The patents do not define "handset" as a "telecommunication device, such as a cellular telephone, pager, or other handheld information receiving device." Indeed, the language Envosys quotes in its brief is not even included in the '159 patent to which all of the patents claim priority.

- **"positioning disclosure feature"** (Dkt. 77 at 13-14): *See supra* p. 14.

- **"means for determining its position"** (Dkt. 77 at 15): *See supra* p. 15.

## V.      CONCLUSION

For the reasons above, Verizon respectfully requests the Court adopt each of Verizon's proposed constructions and decline to construe the other terms that do not require construction.

DATED: May 19, 2022                     Respectfully submitted,


                                        BY: */s/ Geoffrey M. Godfrey*_____
                                        Geoffrey M. Godfrey
                                        Erin Kolter (*pro hac vice*)
                                        Janelle Luceria Elysee (*pro hac vice*)
                                        Dylan Harlow (*pro hac vice*)
                                        DORSEY & WHITNEY LLP
                                        Columbia Center
                                        701 Fifth Avenue, Suite 6100
                                        Seattle, WA 98104-7043
                                        Phone: (206) 903-8800
                                        Fax: (206) 903-8820
                                        godfrey.geoff@dorsey.com
                                        kolter.erin@dorsey.com
                                        elysee.janelle@dorsey.com
                                        harlow.dylan@dorsey.com

Melonie S. Jordan (*pro hac vice*)
DORSEY & WHITNEY LLP
Plaza Tower
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Phone: (714) 800-1400
Fax: (714) 800-1499
jordan.melonie@dorsey.com

Michael E. Jones
Shaun William Hassett
POTTER MINTON, P.C.
110 North College Avenue, Suite 500
Tyler, TX 75710
Phone: (903) 597-8311
Fax: (903) 593-0846
mikejones@potterminton.com
shaunhassett@potterminton.com

*Counsel for Defendant*

**<u>Certificate of Service</u>**

I hereby certify that on May 19, 2022, I caused the foregoing to be electronically filed with the Court using the CM/ECF system, which will send notification of such filing to all registered participants.

Dated:  May 19, 2022                     */s/ Geoffrey M. Godfrey*_____
                                         Geoffrey M. Godfrey